UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON C. THOMPKE, and
MELISSA J. THOMPKE,

        Plaintiffs,

                                        Case Number 17-10369

v.                                        Honorable David M. Lawson

FABRIZIO & BROOK, P.C.,

        Defendant.

_____/

## OPINION AND ORDER DENYING MOTION TO DISMISS

Plaintiffs Jason and Melissa Thompke allege in an amended complaint that defendant Fabrizio & Brook, P.C. violated the Fair Debt Collection Practices Act (FDCPA) and Michigan's Regulation of Collection Practices Act (RCPA) in two ways: by sending them a letter to collect their mortgage debt purporting to be from a lawyer, when the person who signed the letter was not a lawyer and the letter was not reviewed by one in any meaningful way; and by publishing a foreclosure notice that contained more information than was legally required by Michigan's foreclosure by advertisement statute. Fabrizio has moved to dismiss the case, arguing that there is no subject matter jurisdiction because the plaintiffs have not alleged a concrete and particularized injury and therefore have no standing under Article III, and the conduct alleged does not violate the FDCPA and therefore the amended complaint fails to state a claim. The Court heard oral argument on June 13, 2017.

The plaintiffs have filed an affidavit that documents their injuries, which satisfies the requirements of Article III. The assertions in that affidavit do not appear in the amended complaint, but the Court may consider that affidavit in a motion challenging subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1).  The plaintiffs would do well to amend their complaint

again to include them, however.  The plaintiffs' two claims make out violations of the FDCPA.  The

Court will deny the motion to dismiss.

I.  Facts

It appears that the plaintiffs obtained a residential mortgage from Bank of America, or some

other institution that assigned the mortgage to Bank of America.  They fell behind on their

payments.  They allege in their amended complaint that defendant Fabrizio, a law firm that handles

mortgage foreclosures, sent them a letter on January 19, 2017 that read:

> Dear Borrower(s),
>
> BANK OF AMERICA. N.A. has retained our law firm to begin foreclosure
> proceedings on the above referenced property.  As of the date of this letter, you owe
> $70,544.10.  Because of interest, late charges and other charges that may vary from
> day to day, the amount due on the day you pay may be greater, and an adjustment
> may be necessary after our client receives your payment.
>
> Unless you notify this office within 30 days after receiving this notice that you
> dispute the validity of the debt or some portion of it, this office will assume that the
> debt is valid.  If you notify this office in writing within 30 days of receiving this
> notice, this office will obtain verification of the debt or a copy of a judgment and
> mail a copy of it to you.  If you request in writing within 30 days after receiving this
> notice, this office will provide you with the name and address of the original creditor
> if different from the current creditor.
>
> Thank you for your attention to this matter.
>
> Very truly yours,
> s/ Devara Walton
> Real Estate Default Team
> FABRIZIO & BROOKS, P.C.

The following statement appeared on the bottom of the letter:

> FABRIZIO & BROOK, P.C. IS THE CREDITOR'S ATTORNEY AND IS
> ATTEMPTING TO COLLECT A DEBT ON ITS BEHALF.  ANY INFORMATION
> OBTAINED WILL BE USED FOR THAT PURPOSE, HOWEVER, IF YOU ARE

IN BANKRUPTCY OR HAVE BEEN DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM YOU PERSONALLY.

On January 25, 2017, the Fabrizio law firm sent the Thompkes another letter, which read:

Dear Borrower(s),

This law firm represents BANK OF AMERICA, N.A..  We are hereby providing notice that your mortgage is being foreclosed on pursuant to the terms of your mortgage and note.  The foreclosure sale is currently scheduled to take place on March 2, 2017 at 10:00 AM at the public lobby of the Calhoun County Sheriff Department Administration Offices, Battle Creek.  Said sale date is subject to change.

If you are actively enlisted in the military, please contact our office and forward a copy of your enlistment papers to the address listed below.

Thank you for your attention to this matter.

That letter also posted the name "Devara Walton" in the signature block and included the same debt-collector legend at the bottom.

Beginning January 27, 2017 and continuing through February 17, 2017, the defendant published a notice in the *Detroit Legal News* and on the Internet announcing a foreclosure sale of the plaintiffs' home.  The notice began with this declaration:

AS A DEBT COLLECTOR, WE ARE ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. NOTIFY US AT THE NUMBER BELOW IF YOU ARE IN ACTIVE MILITARY DUTY.

The notice then identified the plaintiffs by name in capital letters as the "Mortgagors," stated that they were in default on their mortgage and the amount due, and described the details of the intended foreclosure sale.

The Thompkes take issue with each of these communications. They allege that the letters are confusing because, although the letters are sent by a law firm that represents their creditor, the letters were signed by non-attorney Devara Walton. The letters, they say, are computer generated, mass produced, and sent by Fabrizio's Real Estate Foreclosure Team. And they allege that Fabrizio attorneys did not review the plaintiffs' file before allowing Walton to send out the letters on the law firm's letterhead threatening to foreclose on behalf of Bank of America.

The plaintiffs criticize the foreclosure notice because, they say, it includes more information than the Michigan foreclosure-by-advertisement statute requires, and it publicized their private and protected information. They alleged in their amended complaint that the publication is a prohibited tactic of shaming them into paying their debt, and as a result they have suffered deep, personal embarrassment and shame from their personal debt information being publicized in the community.

In an effort to generalize their claims as applicable to a broad class of debtors, the Thompkes allege that Fabrizio has a policy and practice of sending written and computerized collection communications *en masse* as part of its collection tactics without any meaningful lawyer involvement.

The plaintiffs filed their complaint on February 6, 2017. On March 20, 2017, the defendant filed a motion to dismiss. The plaintiffs responded with an amended complaint, a prolix document rife with legal citations and quotes from statutes and caselaw that fails to honor the spirit and letter of Federal Rule of Civil Procedure 8(a)(2) (requiring that a complaint contain "a *short* and *plain* statement of the claim showing that the pleader is entitled to relief") (emphasis added). The defendant followed with a new motion to dismiss alleging, among other thing, that the plaintiffs lacked standing under Article III of the Constitution because they failed to allege an injury in fact.

The plaintiffs responded to the motion with an affidavit from Jason Thompke describing additional facts that are not alleged in the amended complaint.

Jason Thompke avers in his affidavit that although the plaintiffs were behind on their mortgage, they delivered full payment to Fabrizio on January 30, 2017. He says that even though the plaintiffs paid off their overdue balance in full, Fabrizio continued its publications in the newspaper. He alleges that they continued to hear from neighbors, friends, and family in the community concerned about the Thompkes' financial problems. He says that Fabrizio sent people to take pictures of them and their property even though the mortgage was current. Jason Thompke avers that people now treat him and his wife differently and will continue to do so because the information is forever publically available.

## II. Standing

The defendant brings its motion under Federal Rule of Civil Procedure 12(b)(1) and (6). Federal Rule of Civil Procedure 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Ibid.* (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Ibid.*

"In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the

pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759-60. The "[p]laintiff bears the burden of establishing that subject matter jurisdiction exists." *Id.* at 760 (citing *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004)).

Fabrizio argues that the Court does not have subject matter jurisdiction because the plaintiffs have not alleged facts to establish standing to sue. The defendant reasons that at most, the amended complaint alleges a technical violation of 15 U.S.C. § 1692c(b), without any associated actual, concrete harm. A statutory violation without more, it says, does not confer standing. Fabrizio also argues that it was not *per se* misleading for a non-attorney staff member of Fabrizio to have sent letters to the plaintiffs, and no harm could have flowed from that conduct.

To establish standing to sue under Article III, the plaintiffs must show at least that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The Thompkes have satisfied the second and third elements by the allegations in their amended complaint that the harm they suffered was caused by Fabrizio sending letters and publicizing their personal information. A favorable decision in this case could redress their injuries through an award of statutory damages under the FDCPA. The point of contention centers on whether the Thompkes have alleged an injury in fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized . . . .'" *Id.* at 1548 (quoting *Lujan*, 504

U.S. at 560). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Ibid.*

"Concreteness, therefore, is quite different from particularization." *Ibid.*

Focusing on the amended complaint, the defendant insists that the plaintiffs have not alleged any concrete harm that was caused by any of the communications that it used to collect the debt or foreclose the mortgage. The allegations include a general statement that the plaintiffs were "embarrassed" by the publication of extraneous information in the foreclosure notice, and that they were "confused" by the misleading letter from a non-attorney staff member of the Fabrizio law firm, and nothing more.

These alleged injuries are intangible. But as the Supreme Court has explained, "'[c]oncrete' is not . . . necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549. "[T]he risk of real harm [can] satisfy the requirement of concreteness." *Ibid.* "For example, the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure." (citing Restatement (First) of Torts §§ 569 (libel), 570 (slander *per se*) (1938)). The pertinent inquiry is "whether the [circumstances] alleged in [such a] case entail a degree of risk sufficient to meet the concreteness requirement." *Id.* at 1550.

Insisting that the plaintiffs' alleged injuries do not measure up, the defendant relies primarily on two cases: *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576 (6th Cir. 2016) and *Johnston v. Midland Credit Mgmt.*, 2017 WL 370929 (W.D. Mich. Jan. 26, 2017).

In *Soehnlen*, the plaintiffs sought monetary and injunctive relief against the defendant multi-employer welfare benefit plan for violations of the Employee Retirement Income Security Act of 1974 (ERISA) and the Affordable Care Act (ACA). The plaintiffs argued that "notwithstanding the

ACA's statutory requirement mandating that all group health plans eliminate per-participant and per-beneficiary pecuniary caps for both annual and lifetime benefits, the [defendant] maintain[ed] such restrictions." *Soehnlen*, 844 F.3d at 580. The Sixth Circuit held that the mere statutory violation without a concrete and particularized harm was insufficient to confer Article III standing. *Id*. at 582. The *Soehnlen* plaintiffs argued "in extreme generality" that some of their class members suffered from conditions that required medical expenses in excess of the benefit cap. *Ibid*. And they asserted that some of the class members would forgo medical procedures in order to avoid exceeding the cap. *Ibid*. The Sixth Circuit found that such injuries were neither concrete nor particularized, and arguably conjecture and hypothetical. *Id*. at 583. Therefore, the alleged injuries did not satisfy the injury-in-fact standing element. *Ibid*.

In *Johnston*, the plaintiff alleged an FDCPA violation because the defendant debt collector sent a letter erroneously stating that one of the ways to pay the plaintiff's delinquent credit card debt was to make a monthly payment of $0.00 a month. *Johnston*, 2017 WL 370929, at *1. The district court held that the plaintiff lacked standing because he was unable to identify any concrete harm stemming from this erroneous statement beyond *de minimis* travel expenses and loss of time seeking legal advice. *Id*. at *3. The court reasoned that the letter did not change the fact that the plaintiff owed the debt, and that the plaintiff had not shown there was a risk of future collection attempts looming. *Ibid*.

Neither of these cases are based on facts that approximate those in this case, and therefore provide little guidance. The conduct that the plaintiffs criticize here is twofold: allowing a non-attorney to generate debt collection letters as if she were an attorney, without any attorney supervision; and publicizing extraneous information in a foreclosure notice in an effort to coerce the

plaintiffs into paying a debt. Although intangible, the plaintiffs say they were harmed by this in two respects: confusion and embarrassment. The Supreme Court has noted that "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo*, 136 S. Ct. at 1549 (citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 775-77 (2000)).

In alleging confusion, the Thompkes have channeled the statute. The FDCPA prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3). Similarly, the RCPA prohibits "[c]ommunicating with a debtor in a misleading or deceptive manner, *such as using the stationery of an attorney . . . unless the regulated person is an attorney . . . .*" Mich. Comp. Laws § 445.252(a) (emphasis added). The Thompkes allege that the letters were sent by a non-attorney on Fabrizio's letterhead. The alleged harm is precisely the injury Congress and the Michigan legislature sought to prevent. Letters that appear to be sent by a law firm give the impression that the law firm is directly involved in the collection process and has therefore formed a professional opinion on the alleged debt. *See Nielsen v. Dickerson*, 307 F.3d 623, 632 (7th Cir. 2002); *see also Clomon v. Jackson*, 988 F.2d 1314, 1321 (2d Cir. 1993). Even "[a]n unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up." *Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

The same can be said for the allegation of embarrassment. The FDCPA prohibits a debt collector from communicating, "in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the

creditor, the attorney of the creditor, or the attorney of the debt collector." 15 U.S.C. § 1692c(b). The FDCPA's "ban on communicating with third parties . . . is meant to protect debtors from harassment, *embarrassment*, loss of job, and denial of promotion." *Brown v. Van Ru Credit Corp.*, 804 F.2d 740, 743 (6th Cir. 2015) (emphasis added). Furthermore, a debt collector is prohibited from "[c]ommunicating with a consumer regarding a debt by post card" or "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business." 15 U.S.C. § 1692f(7) & (8). Congress included provisions in the FDCPA that are aimed at protecting the privacy of debtors and sparing them embarrassment in the community. The Thompkes' allegation that they have suffered a concrete injury because Fabrizio disseminated their personal information, which caused them embarrassment, is supported by both history and the judgment of Congress.

Add to that the facts alleged in Jason Thompke's affidavit, in which he avers that even after they paid their debt, the defendant continued the publication of the extraneous information, which cast them in a bad light with their neighbors, causing them to suffer opprobrium that continues to this day. The plaintiffs have shown that their injuries are concrete.

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560 n.1). The Thompkes' alleged harm is particularized because the letters were sent directly to them and the information provided to the public concerned their mortgage. Therefore, the alleged injuries affect the Thompkes in a personal and individual way. The affidavit fortifies the allegations in the amended complaint

sufficiently to establish that the harm alleged is particularized and concrete within the meaning of Article III jurisprudence.

The plaintiffs have demonstrated the constitutional elements of standing sufficiently to establish subject matter jurisdiction.

### III. Failure to State a Claim

The defendant also argues that the plaintiffs have not pleaded claims for which relief can be granted, invoking Federal Rule of Civil Procedure 12(b)(6). The standards are well known to the parties: the purpose of the motion is to allow a defendant to test whether, as a matter of law, the plaintiffs are entitled to legal relief if all the factual allegations in the complaint are taken as true. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). The complaint is viewed in the light most favorable to the plaintiffs, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiffs. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive the motion, the plaintiffs "must plead 'enough factual matter' that, when taken as true, 'state[s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007). Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

At this stage of the case, the Court must accept as true the pleaded facts, but not factual conclusions unless they are plausibly supported by the pleaded facts. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be

disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). However, as long as a court can "'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Fabian*, 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 678).

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Sheriff v. Gillie*, --- U.S. ---, 136 S. Ct. 1594, 1598 (2016) (quoting 15 U.S.C. § 1692(e)). "The Act prohibits a wide array of specific conduct, but it also prohibits, in general terms, any harassing, unfair, or deceptive debt collection practice, which enables 'the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.'" *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (citing S. Rep. No. 95-382, at 4, 1977 U.S.C.C.A.N. 1695, 1698). As the Sixth Circuit has noted, "the FDCPA is 'extraordinarily broad,' crafted in response to what Congress perceived to be a widespread problem." *Barany-Snyder v. Weiner*, 539 F.3d 327, 611 (6th Cir. 2008) (citing *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)).

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1106 (6th Cir. 2015) (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)), *rev'd on other grounds sub nom. Sheriff v. Gillie*, 136 S. Ct. 1594 (2016). In particular, the

-12-

FDCPA prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

The State of Michigan's Regulation of Collection Practices Act (RCPA) prohibits any "regulated person" from "[c]ommunicating with a debtor in a misleading or deceptive manner, such as using the stationery of an attorney or credit bureau unless the regulated person is an attorney or is a credit bureau and it is disclosed that it is the collection department of the credit bureau." Mich. Comp. Laws § 445.252(a). The RCPA defines the term "regulated person" to mean "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . . [a]n attorney handling claims and collections on behalf of a client and in the attorney's own name." Mich. Comp. Laws § 445.251(g).

"In order to establish a claim under § 1692e: (1) plaintiff must be a 'consumer' as defined by the Act; (2) the 'debt' must arise out of transactions which are 'primarily for personal, family or household purposes;' (3) defendant must be a 'debt collector' as defined by the Act; and (4) defendant must have violated '§ 1692e's prohibitions.'" *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (quoting *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 926 (N.D. Ohio 2009)). The parties' dispute centers on the fourth element.

The amended complaint alleges a single cause of action for violations of both the FDCPA and the RCPA. Although the amended complaint suggests a litany of theories of relief under the statutes, they generally fall into two categories: (1) the validation and foreclosure letters contained misleading information, and (2) the public notice disclosed private information.

A.  The Letters

The Thompkes allege that the validation and foreclosure letters were misleading because they were sent by Fabrizio (the firm representing the plaintiffs' creditor) on Fabrizio's letterhead, but they were signed by a non-attorney, and they were computer generated, mass produced and sent to consumers without meaningful attorney involvement.  Fabrizio, on the other hand, argues that the letters were not misleading, because it was plain that they were sent by a non-attorney staff member of Fabrizio and the plaintiffs concede that they understood Walton was not an attorney.

Each letter was sent on letterhead from "Fabrizio & Brook, P.C.," and they use the mailing address of the Fabrizio law firm in Troy, Michigan.  They do not bear the signature of an attorney, but instead include the signature of Devara Walton, a member of Fabrizio's Real Estate Default Team.  Each letter declares that it comes from a law firm attempting to collect a debt.  The plaintiffs contend that the use of the firm's letterhead was deceptive and violated state and federal law because the letters would lead a reasonable consumer to the false impression that they were "from an attorney," when in fact they were generated and sent by administrative personnel not engaged in the practice of law.  Doubling down, they contend that this activity  happens all the time, and that the foreclosure practice is an administrative endeavor conducted without any meaningful lawyer involvement, despite the implications to the contrary.

Could that be "misleading" or "deceptive" under the FDCPA?  "Courts use the 'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA."  *Barany-Snyder*, 539 F.3d at 611 (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)).  "The Act protects 'all consumers,' the 'shrewd' as well as the gullible, from practices that would mislead the 'reasonable unsophisticated consumer,' one with

some level of understanding and one willing to read the document with some care." *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 396 (6th Cir. 2015) (citations omitted). However, "letters that appear misleading only by way of 'bizarre,' 'idiosyncratic,' or 'nonsensical' readings do not violate the Act." *Ibid.* (quoting *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 509 (6th Cir. 2007)); *see also Martin v. Trott Law, P.C.*, 198 F. Supp. 3d 794, 804 (E.D. Mich. 2016).

The amended complaint alleges facts sufficient to establish that the letters were misleading because they could give the least sophisticated consumer who received them the impression that they were "from an attorney," *see* 15 U.S.C. § 1692e(3), when, according to the allegations of the amended complaint, no attorney was involved in any "meaningful" way in drafting, reviewing, or sending the letters. *See also* Mich. Comp. Laws § 445.252(a) (prohibiting the use of "the stationery of an attorney or credit bureau unless the regulated person is an attorney"). If the Thompkes can prove, as they allege, that attorneys at the Fabrizio law firm sent the letters to the plaintiffs without any meaningful attorney review or involvement, and that they were generated by rote, by non-attorney employees of the firm, then Fabrizio may be liable under the FDCPA for sending letters purporting to be "from an attorney," when, in fact, those communications "were not 'from' [any attorney employed by the firm] in any meaningful sense of that word." *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 440 (6th Cir. 2008).

The defendant insists that no one could be misled into believing that a lawyer sent the letters when they plainly were not from an attorney. The defendant contends that the least sophisticated consumer would likely have deduced that Ms. Walton was not an attorney from the fact that her name was not listed among the attorneys whose names were printed at the top of the letterhead. However, that reasoning can cut the other way as well. The nine attorneys that were listed directly

under the firm name could suggest that the letters were sent on their behalf. And even a sophisticated consumer may not come to the conclusion that *all* of the law firm's attorneys were listed directly under the firm name. Indeed, that may not be readily apparent to members of the legal community.

The test is an objective one. "[W]hether a letter is misleading raises a question of fact," and "[g]enerally speaking, 'a jury should determine whether the letter is deceptive and misleading.'" *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) (quoting *Kistner*, 518 F.3d at 441). Viewing the complete letters, a reasonable factfinder could conclude that they were sent by a lawyer or by someone under a lawyer's direct supervision. If that turns out not to be the case, then the letters were "misleading" and "deceptive" under the FDCPA.

## B. Foreclosure Notice

### 1. Preemption

Fabrizio argues that the FDCPA does not extend to foreclosure notices, even if the notices include more information than the statute requires. The plaintiffs attempt to mount a broadside attack on the foreclosure-by-advertisement statute, contending that it has been preempted by the FDCPA. That argument is not persuasive.

"Without an express provision for preemption, 'state law must yield to a congressional Act . . . [only w]hen Congress intends federal law to 'occupy the field,' or 'to the extent of any conflict with a federal statute.'" *Yates v. Ortho-McNeil-Janssen Pharm., Inc.*, 808 F.3d 281, 293-94 (6th Cir. 2015) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (internal quotation marks omitted). Congress did not intend to preempt state laws governing debt collection, "except to the extent that those laws are inconsistent with any provision of this subchapter, and then

only to the extent of the inconsistency." 15 U.S.C. § 1692n. And if a state law "affords any consumer . . . greater . . . protection provided" by the FDCPA, it will not be regarded as "inconsistent." *Ibid.*

It is plain that Congress contemplated that only conflict preemption would be in play. "'Conflict preemption' exists where (1) 'it is impossible for a private party to comply with both state and federal law,' and (2) the state law is 'an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Ibid.* (quoting *Crosby*, 530 U.S. at 372-73).

The foreclosure-by-advertisement statute prescribes a list of items that must be included in a foreclosure notice, including the name of the mortgagor, the amount due, and a description of the mortgaged premises. Mich. Comp. Laws § 600.3212. The notice must be published for four consecutive weeks "in a newspaper published in the county where the premises included in the mortgage . . . are situated." Mich. Comp. Laws § 600.3208. The plaintiffs have not explained how any of these requirements collide with the FDCPA.

The Thompkes argue that Fabrizio included more information than required by Michigan's statute. But that does not support an argument for preemption. The plaintiffs say that there is no requirement that the warning notice be in bold letters or that they contact the law firm if they are in active military service. Although true, the lack of such a requirement does not put the federal and state laws at odds. The Thompkes point out that the amount due is stated in the notice (as Michigan law requires), but fail to explain where the FDCPA forbids publicizing such information in a foreclosure notice. It is not impossible for Fabrizio to comply with both state and federal law. The Thompkes fail to explain how Michigan's foreclosure statute and the FDCPA are in conflict. Absent such conflict, there is no preemption.

## 2. FDCPA Violation

Fabrizio also argues that notice required by Michigan's foreclosure law is "entirely different from the harassing communications that the FDCPA was meant to stamp out." *Vien-Phuong Thi Ho v. ReconTrust Co.*, NA, 858 F.3d 568, 574 (9th Cir. 2016). However, the Sixth Circuit has held that mortgage foreclosure is debt collection under the FDCPA, because "the ultimate purpose of foreclosure is the payment of money." *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 463 (6th Cir. 2013); *but see Vien-Phuong Thi Ho*, 2016 WL 9019610, at *4 (finding *Glazer*'s reasoning unpersuasive). Michigan's foreclosure statute is not automatically free from the FDCPA's requirements.

Fabrizio points out, however, that the foreclosure notice did not demand payment. It contends that because the notice did not demand payment, it was not made in connection with the collection of a debt. That is not entirely accurate, however. "[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). "[A]n 'explicit demand for payment' is not always necessary for the statute to apply." *Ibid*. (quoting *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010)). The Sixth Circuit has explained that "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Ibid*.

There is plenty about the foreclosure notice that would permit the conclusion that its "animating purpose" was "to induce payment." For one, it led off with the statement, "AS A DEBT COLLECTOR, WE ARE ATTEMPTING TO COLLECT A DEBT." For another, the notice states that the Bank of America "claimed to be due, at the time of this notice, the sum of . . . $70,544.10."

-18-

And another statement in the notice declares that there will be a sale of the premises, "or so much as may be necessary to pay the amount due."

Fabrizio argues that the purpose of the publication was to satisfy the statutory requirements governing foreclosure by advertisement, not to induce the Thompkes to make payment on the defaulted mortgage. It supports its argument by referring to the Federal Trade Commission's Staff Commentary, which explains that the term "communication" in the FDCPA refers to oral and written transmission of messages that refer to a debt, but "does not include a notice that is required by law as a prerequisite to enforcing a contractual obligation between creditor and debtor, by judicial or nonjudicial legal process." Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 FR 50097-02. However, the Thompkes' claim concerns information *not* required under the Michigan statute. Although the FTC commentary is informative, it does not address the precise issue in this case.

The question remains whether the extra information in the foreclosure notice ran afoul of the FDCPA. The items in the notice *not* required by Michigan's foreclosure-by-advertisement statute were the bold face introductory sentence stating that Fabrizio was a debt collector, the information obtained would be used for that purpose, and they should contact the law firm if they are in active military service. The plaintiffs also complain that their names were included in the notice in all capital letters.

The FDCPA prohibits actions by debt collectors from using collection methods that are "harassing [or] unfair," *Currier*, 762 F.3d at 533, so as to publically embarrass the debtor by exposing the debt to the public. Among the prohibited practices are

(7) Communicating with a consumer regarding a debt by post card[, and].

-19-

> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 U.S.C.A. § 1692f(7) & (8). Capitalizing the plaintiffs' names is not a prohibited practice. But by including the "debt collector" language in the foreclosure notice, the defendant would have violated these provision in the FDCPA, if it turns out that "an animating purpose of the communication must be to induce payment by the debtor." *Grden*, 643 F.3d at 173.

That the notice was published to comply with Michigan's foreclosure-by-advertisement statute does not thereby immunize the defendant from an FDCPA violation. The defendant cites *Wood v. Midland Funding, LLC*, No. 16-2206, 2017 WL 2703795 (6th Cir. June 22, 2017), perhaps suggesting the contrary. In that case, the court of appeals held that the defendant did not violate the FDCPA by publishing in a local newspaper a court order for alternate service of a collection lawsuit against the plaintiff, even though the "Defendants proposed language for the [state court] orders with fulsome detail." 2017 WL 2703795, at *5. The court held that "Defendants' compliance with the state-court orders by itself is not cognizable as harassing or abusive conduct under § 1692d." *Ibid.* In this case, however, there was no judicial sanction of the foreclosure notice's language, and the notice itself included information beyond that required by the statute.

If the FDCPA makes one thing clear, it is that debt collectors must be circumspect in the way they choose to communicate with debtors. This is a highly regulated industry, and strict compliance is the order of the day. The plaintiffs have stated a plausible theory that the defendant abused Michigan's foreclosure-by-advertisement statute by including extra information as a means to publicly disseminate private facts about the plaintiffs' indebtedness to shame them into paying. As has been said when dealing with Rule 12(b)(6) motions, "[t]he facts may not bear out these

allegations. But that is neither here nor there. Plausible allegations suffice at the pleading stage."

*Nat'l Credit Union Admin. Bd. v. Jurcevic*, --- F.3d ---, No. 14-4297 (6th Cir. Aug. 11, 2017). Jason

Thompke's affidavit shows how the misuse of the procedure compounded that abuse, although that

is not formally a part of this case, at least for now.

The plaintiffs have stated a plausible claim under the FDCPA. Many of the prohibited acts

in the Michigan statute echo the prohibitions in the federal statute. *See* Mich. Comp. Laws §

445.252(h), (l), (m) & (r). Therefore, the plaintiffs have stated a claim under the RCPA as well.

IV. Conclusion

The plaintiffs have established the elements of Article III standing, and therefore the Court

has subject matter jurisdiction over the dispute. They have stated claims upon which relief may be

granted.

Accordingly, it is **ORDERED** that the defendant's motion to dismiss [dkt. #10] is **DENIED**.

It is further **ORDERED** that counsel for the parties appear to continue the case management

conference on **September 14, 2017 at 10:30 a.m.**

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 14, 2017

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 14, 2017.

s/Susan Pinkowski
SUSAN PINKOWSKI