## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**JASON C. THOMPKE and**
**MELISSA J. THOMPKE**
**On Behalf of Themselves and All**
**Others Similarly Situated,**

                                     Hon.　David M. Lawson

        Plaintiff                       Case No. 17-10369

                            AMENDED COMPLAINT

v.

**FABRIZIO & BROOK, P.C.**

        Defendant.

---

### AMENDED COMPLAINT AND JURY DEMAND

NOW COMES Plaintiffs**, JASON C. THOMPKE and MELISSA J. THOMPKE**
(hereinafter referred to as "THOMPKE" or "Plaintiff") by and through counsel, The Law Offices
of Brian Parker, PC, and brings the AMENDED action under Fed. Rule 15a against the above
listed Defendant**, FABRIZIO & BROOK, P.C.** ("FABRIZIO" or "Defendant") on the grounds
set forth herein:

### I.  PRELIMINARY STATEMENT REGARDING THIS CASE

1.    Plaintiff brings this action for the illegal practices of the Defendants who, as part of
Fabrizio' foreclosure process, sends Michigan homeowners initial debt communication letters
similar to **Exhibit 1 and Exhibit 3** and follows up by posting in an "open medium," Mortgage
Foreclosure Sale Notices on the internet, county buildings and newspapers in **Exhibit 2** with the
same private debt information enclosed in **Exhibit 1** in violation of the FDCPA and RCPA, while
breaching the right of homeowner's privacy and all without meaningful file review or involvement

by an attorney in the Thompkes' file.

2.      The Plaintiff alleges that Defendant FABRIZIO collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and The Regulation of Collection Practices Act (RPCA), codified in computer generated communications from a law firm that lacks meaningful involvement by Defendant Attorneys.

## II.  CASELAW AND CONSUMER STATUTES REGARDING THIS CASE

3.      The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

4.      The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Sixth Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006). This standard ensures "that the FDCPA protects all consumers, the gullible as well as the shrewd."  *Kistner v. Law Offices of Michael P. Margelefsky, LLC.*, 518 F.3d 433, 438 (6th Cir. 2008).

5.      In applying the "least sophisticated consumer" standard, the Sixth Circuit has adopted the "more than one reasonable interpretation standard." *Kistner*, 518 F.3d at 441. Under that approach, a collection letter can be "deceptive" if it is open to "more than one reasonable interpretation, at least one of which is inaccurate." Id. (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). "[T]he 'more than one reasonable interpretation' standard is

applicable to the entirety of § 1692e as a useful tool in analyzing the least sophisticated

consumer test." Id.

6.     The FDCPA applies to lawyers regularly engaged in consumer debt-collection litigation.

*Heintz v. Jenkins*, 514 U.S. 291 (1995); *Schroyer v. Frankel*, 197 F.3d 1170, 1173-74 (6th Cir.

1999); *See also Kistner*, 518 F.3d 433 (the law firm's owner may also be individually liable).

7.     In *Heintz v. Jenkins,* the Supreme Court refused to defer to the FTC commentaries.

*Heintz* addressed the FTC's purported exclusion from FDCPA coverage of attorneys engaged in

"legal activities" as opposed to those engaged in "debt collection activities." Rejecting this

exclusion, the Supreme Court noted that the commentaries themselves state that they are "not

binding on the Commission or the public." *Heintz v. Jenkins*, 514 U.S. 291, 298 (1995).

See *Glazer v. Chase Home Finance LLC,* 704 F. 3d 453.

8.     "In fact, every mortgage foreclosure, judicial or otherwise, is undertaken for the very

purpose of obtaining payment on the underlying debt, either by persuasion (i.e, forcing a

settlement) or compulsion (i.e., obtaining a judgment of foreclosure, selling the home at auction,

and applying the proceeds from the sale to pay down the outstanding debt)." *Glazer v. Chase

Home Finance LLC*, 704 F. 3d 453. *See Goodrow v. Friedman & MacFadye*n, P.A., 788 F. Supp.

2d 464, 471 (E.D.Va. 2011) ("[A] debt collector must comply with the FDCPA while complying

with a state foreclosure law."); *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998).

9.     FABRIZIO becomes involved with these mortgage debts after they considered delinquent

or in default. FABRIZIO is aware of that lawyers who meet the general definition of a "debt

collector" must comply with the FDCPA when engaged in mortgage foreclosure. See

*Glazer v. Chase Home Finance LLC,* 704 F. 3d 453.

10.    To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false,

deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1)-(16). Among these *per se* violations prohibited by that section are: false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. §1692e(2)(A); and the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10).

11.    Among the ***per se*** violations prohibited by the FDCPA is 15 U.S.C. § 1692c(b):

(b) COMMUNICATION WITH THIRD PARTIES.  Except as provided in section 804, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, ***a debt collector may not communicate, in connection with the collection of any debt, with any person other than a consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector***.

12.    The FDCPA states at 15 U.S.C. § 1692d that:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(4) The advertisement for sale of any debt to coerce payment of the debt.

13.    The FDCPA states at 15 U.S.C. § 1692f that:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

14.    As stated above, the FDCPA provides tools for consumers to remedy abuses under the Act such as Sections 1692c(b), 1692d and 1692e.

15.    Sections 1692(a) **states**

(a)ABUSIVE PRACTICES

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to *invasions of individual privacy*.

16.    Under Michigan's Foreclosure Statute at MCL 600.3212:

**600.3212 Notice of foreclosure by advertisement; contents.**

Every notice of foreclosure by advertisement shall include all of the following:

 (a) The names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any.

(b) The date of the mortgage and the date the mortgage was recorded.

(c) The amount claimed to be due on the mortgage on the date of the notice.

(d) A description of the mortgaged premises that substantially conforms with the description contained in the mortgage.

(e) For a mortgage executed on or after January 1, 1965, the length of the redemption period as determined under section 3240.

(f) A statement that if the property is sold at a foreclosure sale under this chapter, under section 3278 the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period.

17.    Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "A debt collector violates § 1692e, put simply, if the collection practice that he uses has the tendency to confuse the least sophisticated consumer." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1106 (6th Cir. 2015) (citing *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329 (6th Cir. 2006)), rev'd on other grounds sub nom. *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016).

18.     The State of Michigan's Regulation of Collection Practices Act (RCPA) prohibits any "regulated person" from "[m]aking an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt," Mich. Comp. Laws § 445.252(e), and from "[m]isrepresenting in a communication with a debtor [either] [t]he legal status of a legal action being taken or threatened [or] [t]he legal rights of the creditor or debtor," Mich. Comp. Laws § 445.252(f). The RCPA defines the term "regulated person" to mean "a person whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency including . . . . [a]n attorney handling claims and collections on behalf of a client and in the attorney's own name." *MARTIN v. TROTT LAW, P.C.*, Case No. 15-12838 (July 26, 2016).

19.     The RCPA, like the FDCPA, prohibits debt collectors from using deceptive, coercive, threatening, abusive, and other repugnant practices for the purpose of collecting a consumer debt. "The RPCA mirrors the requirements and remedies of the FDCPA with the same 6th Circuit use of the "least sophisticated consumer" standard of *Kistner*, 518 F.3d at 441. *McKeown v. Mary Jane M. Elliott P.C.,* No. 07–12016–BC, 2007 WL 4326825, at *5 (E.D.Mich. Dec. 10, 2007) (citing *Hubbard v. Nat'l Bond and Collection Assocs., Inc.,* 126 B.R. 422, 426 (D.Del.1991)).

20.     Under the guise of following the State Foreclosure Statue, Defendant is are violating Federal law and breaching the Plaintiff homeowner's right to privacy in publicizing consumers' private debt information in Public Notices to the internet, newspapers and the Detroit Legal News beyond what is required under the State Foreclosure law at MCL 600.3212 with consumers suffering mental distress and embarrassment, damage to their reputations in the community as everyone now knows Plaintiff is in default of a debt, the amount and that they are being pursued by debt collectors with the Defendant breaching the homeowners' privacy rights also in violation

of both the statutory and actual damages provisions of the FDCPA and RCPA. **Please see Plaintiff's Affidavit at Exhibit 4**.

21.     The Thompkes seek statutory and actual damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA, RCPA, and all other common law or statutory regimes.

### III. PARTIES AND APPLICABLE COLLECTION STATUTES

22.     Plaintiffs are consumers and natural persons and at all times relevant to this complaint, resided in the City of Marshall, County of Calhoun, State of Michigan.

23.     Located in the City of Troy, Oakland County and State of Michigan, Fabrizio & Associates, P.C. ("FABRIZIO") are debt collectors under the FDCPA and RCPA and a mortgage foreclosure law firm engaged in the business of using the mail, public notices and telephone to collect consumer debts originally owed to others, including residential mortgage debts. Mortgage foreclosure is debt collection under the FDCPA See *Glazer v. Chase Home Finance LLC*, 704 F. 3d 453.

24.     The alleged debt being collected by FABRIZIO is a "debt" as defined by 15 U.S.C. §1692a (5). The alleged mortgage debt is a "consumer debt" as defined by the RCPA under MCL 445.251(a).

25.     Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a (3). Plaintiff is, at all times relevant to this complaint, a "consumer" as that term is defined by the RCPA under MCL 445.251(d).

26.     FABRIZIO is a mortgage foreclosure law firm staffed with attorneys and non-attorneys who collect, and attempt to collect, debts incurred, or alleged to have been incurred, for personal,

family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet. See *Glazer v. Chase Home Finance LLC,* 704 F. 3d 453.

27.     FABRIZIO is, at all times relevant to this complaint, engaged in the act and/or practice of "debt collection" as that term is defined by the RCPA.

28.     As a mortgage foreclosure law firm, Defendant FABRIZIO is, at all times relevant to this complaint, a "regulated person" as that term is defined by the RCPA under MCL 445.251(g).

29.     FABRIZIO is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a (6).

30.     Defendant Fabrizio is a regulated person under the RCPA regardless of whether the firm's collection activities were carried out "in its own name" or on behalf of its clients. *Ward v. G. Reynolds Sims & Assoc.*, No. 12-12078, 2013 WL 364012 (E.D. Mich. Jan. 30, 2013); *Newman v. Trott & Trott, P.C.*, 889 F. Supp. 2d 948 (E.D. Mich. 2012); *Baker v. Residential Funding Co., LLC*, 886 F. Supp. 2d 591 (E.D. Mich. 2012); *Misleh v. Timothy E. Baxter & Associates*, 786 F. Supp. 2d 1330 (E.D. Mich. 2011); *McKeown v. Mary Jane M. Elliott P.C.*, No. 07-12016, 2007 WL 4326825 (E.D. Mich. Dec. 10, 2007).

## IV. JURISDICTION & VENUE

31.     Jurisdiction arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. §§ 1331, 1337.

32.     Supplemental jurisdiction for Plaintiff's state law claims arise under 28 U.S.C. § 1367. *Baltierra v. Orlans & Associates PC*, No. 15-cv-10008 (E.D. Mich. Oct. 7, 2015). Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

33.     The factual basis of the RCPA claim is the same as the factual basis of the FDCPA claim and this district court has "supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III of the United States Constitution.  28 U.S.C. § 1367(a). *Lovelace v. Stephens & Michaels Assocs., Inc.*, No. 07-10956, 2007 WL 3333019, at *2 (E.D. Mich. Nov. 9, 2007) (stating that FDCPA claims and RCPA claims are simply duplicates and "need not be addressed separately").

34.    Venue is appropriate in this federal district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because each of the Defendants are subject to personal jurisdiction in the State of Michigan at the time this action is commenced.

## V. FACTS CONCERNING PLAINTIFF AND THE FORECLOSURE NOTICE

35.    Sometime prior to January 19, 2017, Plaintiff allegedly incurred a financial obligation on a mortgage that FABRIZIO eventually foreclosed upon.

36.    The mortgage debt arose out of a transaction in which the money, property, insurance, or services are the subject of the transaction that are primarily for personal, family, or household purposes.

37.    FABRIZIO' primary business is a law firm that represents banks and servicers in foreclosing on Michigan homeowners like the Plaintiff. Defendant's website states:

Mortgage Foreclosures And Loss Mitigation

Our highly diversified attorneys are relied on as experts and counselors always available to help guide our clients through all aspects of the default servicing process. We are recognized in the industry as a top-tiered law firm in foreclosure and loss mitigation initiatives. We utilize the top technology and best systems available to ensure impeccable quality and efficiency in every aspect of our practice.

38.    *As part of the Fabrizio' s foreclosure process*, Defendant sends Michigan homeowners initial debt communication letters similar to **Exhibit 1 and Exhibit 3** *from non-attorneys* on attorney and law firm communications and follows up by posting Mortgage Foreclosure Sale

Notices on the internet, county buildings and newspapers in **Exhibit 2** that contain the same

private debt information from **Exhibit 1** in violation of the FDCPA and RCPA and all without

meaningful involvement or file review by an attorney from the firm.

39.     Further, the names of the Homeowners are placed in Bold Letters so that the

homeowners' names stick out similarly to the text announcing that they are being pursued by

debt collectors in the Notice in **Exhibit 2**.

> AS A DEBT COLLECTOR, WE ARE ATTEMPTING TO
> COLLECT A DEBT AND ANY INFORMATION OBTAINED
> WILL BE USED FOR THAT PURPOSE. NOTIFY US AT
> THE NUMBER BELOW IF YOU ARE IN ACTIVE MILITARY
> DUTY.
> MORTGAGE SALE - Default having been made in the terms
> and conditions of a certain mortgage made by JASON C
> THOMPKE A MARRIED MAN AND MELISSA J THOMPKE.
> Mortgagors, to Mortgage Electronic Registration Systems Inc.
> (MERS) as nominee for AMERIFIRST FINANCIAL

40.     Defendant FABRIZIO sent an initial communication letter at **Exhibit 1** as a debt collector

as defined by 15 U.S.C. § 1692a (6). The Letter at **Exhibit 1** was sent to Plaintiff in connection

with the collection of a "debt" as defined by 15 U.S.C. § 1692a (5).

41.     The Letter at **Exhibit 1 and Exhibit 3** and Public Notice at **Exhibit 2** both contained the

same debt information and are considered a "communication" to the debtor Plaintiff as defined by

15 U.S.C. § 1692a (2).

42.     The Letter at **Exhibit 1** appears to be generated by non-attorneys from a Real Estate Default

Team while also claiming to be a debt collector and the Creditor's Attorney on a letter with a law

firm letterhead.  The Thompkes were not in bankruptcy at the time they received the letters from

Fabrizio.

> **FABRIZIO & BROOK, P.C. IS THE CREDITOR'S ATTORNEY AND IS ATTEMPTING TO COLLECT A DEBT ON ITS BEHALF. ANY
> INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. HOWEVER, IF YOU ARE IN BANKRUPTCY OR HAVE BEEN
> DISCHARGED IN BANKRUPTCY, THIS LETTER IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED AS AN
> ATTEMPT TO COLLECT A DEBT OR AS AN ACT TO COLLECT, ASSESS, OR RECOVER ALL OR ANY PORTION OF THE DEBT FROM
> YOU PERSONALLY.**

43.     As Plaintiff understood the Letter at **Exhibit 1 and Exhibit 3** upon receiving it, as would

the least sophisticated consumer, the debt collection process has entered into a phase where FABRIZIO will begin to use legal procedures established by foreclosure law and Fabrizio attorneys to collect the mortgage debt under *Glazer v. Chase Home Finance LLC,* 704 F. 3d 453.

44.     In the Format of the Letter at **Exhibit 1**, Defendant states in part that it has been retained to collect the debt through foreclosure proceedings:

> Dear Borrower(s),
>
> BANK OF AMERICA, N.A. has retained our law firm to begin foreclosure proceedings on the above referenced property. As of the date of this letter, you owe $70,544.10. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater, and an adjustment may be necessary after our client receives your payment.

45.     Indeed, the Defendant follows up with a similar letter announcing the foreclosure just six days later at **Exhibit 3**.

> Dear Borrower(s),
>
> This law firm represents BANK OF AMERICA, N.A.. We are hereby providing notice that your mortgage is being foreclosed on pursuant to the terms of your mortgage and note. The foreclosure sale is currently scheduled to take place on March 2, 2017 at 10:00 AM at the public lobby of the Calhoun County Sheriff Department Administration Offices, Battle Creek. Said sale date is subject to change.
>
> If you are actively enlisted in the military, please contact our office and forward a copy of your enlistment papers to the address listed below.
>
> Thank you for your attention to this matter.
>
> Very truly yours,
>
> *Devara Walton*
>
> Real Estate Default Team
> FABRIZIO & BROOK, P.C.

46.     Plaintiff understood the Letters upon receiving them as would the least sophisticated consumer, that they were was coming from a law firm. The letter also states that Fabrizio is the creditor's attorney:

FABRIZIO & BROOK, P.C. IS THE CREDITOR'S ATTORNEY AND IS ATTEMPTING TO COLLECT A DEBT ON ITS BEHALF.

**Initial Communication letter at Exhibit 1**.

47.    Yet, the letters at **Exhibit 1 and Exhibit 3** is also part of a computer generated, mass produced template letters sent to homeowners facing foreclosure by FABRIZIO's Real Estate Default Team and non-attorneys on law firm letters and letterhead.



48.    The letters caused much confusion for the debtor receiving these letters at **Exhibit 1 and Exhibit 3** and were misleading as Fabrizio's letters come with the threat by an attorney law firm to foreclose, while claiming to be a debt collector and also being signed by a non-attorney, Devara Walton from a Real Estate Default Team.

49.    Given the *triple threat* of foreclosure representation and the legal confusion such a letter causes the Plaintiff debtor with the use of **Exhibit 1 and Exhibit 3**, the letters are clearly written without any meaningful involvement or *specific file* review of the Thompkes' file by any attorney in violation of 15 U.S.C. §§ 1692e (3) and 15 U.S.C. §§ 1692e (10).

50.    The next part of the foreclosure process after FABRIZIO sends out its initial dunning letters is the setting of the actual Notice of Mortgage Foreclosure Sale Notice which is placed in county buildings, the internet, the Detroit Legal news and on the door of the homeowner for all to see.

51.    Michigan's Foreclosure Statute at MCL 600.3212 is as follows:

**600.3212 Notice of foreclosure by advertisement; contents.**

Sec. 3212.

Every notice of foreclosure by advertisement shall include all of the following:

(a) The names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any.

(b) The date of the mortgage and the date the mortgage was recorded.

(c) The amount claimed to be due on the mortgage on the date of the notice.

(d) A description of the mortgaged premises that substantially conforms with the description contained in the mortgage.

(e) For a mortgage executed on or after January 1, 1965, the length of the redemption period as determined under section 3240.

(f) A statement that if the property is sold at a foreclosure sale under this chapter, under section 3278 the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period.

52.     The Triple Threat Initial Communication Letters are sent out on January 19, 2017 and January 25, 2017. The Mortgage Foreclosure Sale Notice with the same private debt information as in **Exhibit 1 and Exhibit 3**, was published in newspapers, in county buildings, Detroit Legal News and the Internet from January 27, 2017 through February 17, 2017 in **Exhibit 2**.

53.     MCLA 600.3212 does not require that there be a warning notice (IN BOLD LETTERS) that "**AS A DEBT COLLECTOR, WE ARE ATTEMPTING TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**" Federal Law however, does require the warning when a debt collector is communicating the collection of a debt under 15 U.S.C. § 1692e (11).

54.     The FDCPA defines communication at 15 U.S.C. § 1692a (2) as:

(**2**) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person *through any medium*.

-13-

55.    Defendant is communicating directly to Plaintiffs when it states:

> **AS A DEBT COLLECTOR, WE ARE ATTEMPTING TO COLLECT A DEBT
> AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
> NOTIFY US AT THE NUMBER BELOW IF YOU ARE IN THE ACTIVE
> MILITARY**

56.    The Michigan Foreclosure Statute does not require FABRIZIO to include anything in the

Public Notice at **Exhibit 2** regarding the homeowner's rights if they are current or former

military members.

57.    Even though MCL 600.3212 does not require it, Defendant FABRIZIO breaches the

Plaintiff's right to privacy by telling the public in an "open medium" in violation of 15 U.S.C. §

1692f(7 and (8) LARGE LETTERS that JASON C. THOMPKE and MELISSA J. THOMPKE

are in Default on their mortgage being pursued by debt collectors:



58.    The "open medium" in the internet, Detroit Legal news and "Posted" on the door of the

Thompkes is a communication  through Public Notice is to sell the home to pay off the mortgage

and states how much debt is owed and "*claimed to be due*" (same amount as in the letter at

**Exhibit 1**) and that Attorneys are seeking to sell the home to pay off the underlying debt. **Please

see Exhibit 2**.

**BANK OF AMERICA, N.A. on which mortgage there is claimed to be due, at the date of this notice, the sum of Seventy Thousand Five Hundred Forty-four and 10/100 ($70,544.10), and no suit or proceeding at law or in equity**

**Records, page 547, said Mortgage having been assigned to BANK OF AMERICA, N.A. on which mortgage there is claimed to be due, at the date of this notice, the sum of Seventy Thousand Five Hundred Forty-four and 10/100 ($70,544.10), and no suit or proceeding at law or in equity**

59.     There is only one underlying purpose in this notice and that is to sell off the home to pay the mortgage debt.

**provided, notice is hereby given that on the 2nd day of March, 2017 at 10:00 AM o'clock Local Time, said mortgage will be foreclosed by a sale at public auction, to the highest bidder, at the public lobby of the Calhoun County Sheriff Department Administration Offices, Battle Creek MI (that being the building where the Circuit Court for the County of Calhoun is held), of the premises described in said mortgage, or so much thereof as may be necessary to pay the amount due.**

60.     In violation of the FDCPA and RCPA, the private debt information, bold names of the homeowners, the fact that the debt is in default, the debt is being sought after by debt collectors and that the home is being sold to pay off the debt or amount due is posted to public notices like **Exhibit 2** throughout the county even though the Michigan Foreclosure Statute does not require the publication of such information.

61.     As a debt collector that is collecting mortgage debts for its creditor clients, Defendant Fabrizio itself is aware that after the 6th Circuit's ruling in *Glazer v. Chase Home Finance, LLC*, 704 F. 3d 453, 456., that foreclosure firms must comply with the strict mandates of the FDCPA.

-15-

62.    The Sixth Circuit in *Glazer* does not create a carve out or exception for the Notice of Mortgage Sale being anything but debt collection and part of the foreclosure process as a communication to collect a debt under the FDCPA.

63.    Foreclosure activity under *Glazer* is considered debt collection for the purpose of obtaining payment through the advertised foreclosure sale.  "Whether through reinstatement or less directly through foreclosure sale and recovery of the proceeds, "[t]here can be no serious doubt that the ultimate purpose of [this] foreclosure is the payment of money. *Glazer* at 463."

64.    In fact, other foreclosure firms throughout the State of Michigan are foreclosing on homes without violating the law and breaching the privacy rights of consumers *as Defendant Fabrizio does here*. **Please see Exhibit 5 examples of foreclosure firm notices in the same mediums as Fabrizio posted the Thompkes' Public Notice**.

65.    In writing to the Thompkes, the Defendant intended that **Exhibit 1 and Exhibit 3** imply a heightened severity over the communications from the debt collector law firm and that the least sophisticated consumer would react with a commensurate level of alarm and concern especially in that the communication is based on losing the home by way of a notice from a law firm that says "Bank of America, N.A. has retained our law firm to begin foreclosure proceedings on the above referenced property. As of the date of this letter, you owe $70,544.10."

66.    After receiving the FABRIZIO Letter, the Plaintiffs reasonably inferred – as would a "least sophisticated consumer" – that the bank (in this case Bank of America) was proceeding aggressively as it has incurred the expense to hire a law firm, whose attorneys ***should be*** personally involved with the review and collection of their alleged account and charged fees and costs to be paid before they can reinstate their Mortgage Loan.

67.     Plaintiffs are informed and believe, and on that basis, allege, that the Defendants have a policy and practice of sending consumers, such as Plaintiffs, computer-generated, mass-produced letters  without client specific, attorney file review– in the form of the Triple Threat Fabrizio letter at **Exhibit 1 and Exhibit 3** and Public Notices like **Exhibit  2**-- ***without any meaningful attorney review or involvement*** prior to the mailing of those letters or posting of the Public Notice of Sale in violation of 15 U.S.C. §§ 1692e (3) and 15 U.S.C. §§ 1692e (10).

68.     The purpose of the communications from Fabrizio being only about selling the home to pay off the debt was further confirmed six days after Defendant sent the letter at **Exhibit 1**, it sent Plaintiff **Exhibit 3** announcing the date of the sale of the Thompkes' home.

69.     Defendant Fabrizio was allowing a ***non-attorney***, Devara Walton to send out letters with the lawyer letterhead and threats to foreclose on behalf of the Creditor and as a debt collector for the bank in violation of § 445.252(a) as Ms. Walton used the stationery and letterhead of the Fabrizio law firm. **Please see Exhibit 1 and Exhibit 3**.

70.     The legal threat of the letters and public notice imply a heightened severity with the mention of law firms and attorneys so that the least sophisticated consumer would react with a commensurate level of alarm and concern when receiving these debt collection communications.

71.     If there was any meaningful involvement or oversight by an Attorney, **Exhibit 1, 2, 3** would have followed the FDCPA and the RCPA prior to publicizing in and "open medium" that Plaintiff is in Default on a debt and that Attorneys are seeking to sell the Thompkes' home to pay off the underlying debt.

72.     The Defendant's written communications in the form attached as **Exhibit 1 and 3** are false, deceptive, and misleading in that these communications were neither drafted by, nor received any

meaningful review or involvement from, a licensed attorney prior to the mailing of said letters in violation of 15 U.S.C. §§1692e, 1692e (3) and 1692e (10).

73.     As a result of the violations of the FDCPA and RCPA and the consumers' right to privacy from having their debt information publicized in an "open medium," Plaintiffs suffered deep, personal embarrassment and shame from their personal debt information being publicized in the community beyond what would occur had Defendant followed Michigan and Federal. Please see **Exhibit 4**.

74.     Further, the Thompkes suffered statutory and actual damages under the FDCPA and RCPA as the Notices at **Exhibit 2** were not only placed in the internet, newspapers and the Detroit Legal News, but the Public Notice was posted on the door of the Thompkes and advertised to the community that the homeowners were being pursued by debt collectors for a debt they defaulted on with the amount of the debt being advertised being claimed to be due on the date of the publication.  Please see **Exhibit 4**.

## VI. FIRST CAUSE OF ACTION

## RCPA CLASS ALLEGATIONS FOR STATUTORY AND ACTUAL DAMAGES AND INJUNCTIVE RELIEF

75.     Defendant has violated the RCPA. Defendant's violations of the RCPA include, but are not necessarily limited to, the following:

a.     Defendant violated MCLA 445.252(a) by communicating with Plaintiff in a deceptive manner using the stationery of an attorney combined with allowing a non-attorney to rely upon the lawyer letterhead and using false Public Notices that don't comply with the Michigan Foreclosure Statute using (*Exhibit 1, 2 and32*) as mentioned above; and

b.     Defendant violated MCLA 445.252(n) by using a harassing, oppressive, or abusive

method to collect a debt, using (*Exhibit 1, 2 and 3*) and publicizing personal debt information

beyond the Michigan Foreclosure Statute mandates as mentioned above; and

c.      Defendant violated MCLA 445.252(e) Making an inaccurate, misleading, untrue, or

deceptive statement or claim in a communication to collect a debt or concealing or not revealing

the purpose of a communication when it is made in connection with collecting the underlying

debt at (*Exhibit 1, 2 and 3*) without revealing the proper and exact amount owed by Plaintiff as

mentioned above; and

d.      Defendant has violated MCLA 445.252(f) Misrepresenting in a communication with a

debtor 1 or more of the following:

(i)     The legal status of a legal action being taken or threatened.

(ii)    The legal rights of the creditor or debtor at (*Exhibit 1, 2 and 3*); and

e.      Defendant has violated MCLA 445.252(d) by using forms that may otherwise induce the

belief that they have judicial or official sanction is involved such as (*Exhibit 2*) when they

contain false, confusing or illegal information as stated above; and

f.      Defendant has violated MCLA 445.252(a) by communicating with a debtor in a

misleading and deceptive manner with forms such as (*Exhibit 1, 2 and 3*) while failing to provide

proof of the amount of debt and reinstatement amounts owed in dunning letters; and

g.      Defendant has violated MCLA 445.252(m) by bringing to public notice that the

consumer is a debtor with **Exhibit 2**; and

h.      Defendant has violated MCLA 445.252(q) by failing to implement a procedure designed

to prevent a violation by an employee with forms and practices involving (*Exhibit 1, 2 and 3*)

with forms that are clearly illegal and not justified in the breach of privacy in seeking amounts

not owed.

**Wherefore**, Plaintiff seeks judgment for actual and statutory damages and INJUNCTIVE RELIEF against Defendants for:

a.    Actual (*Exhibit 4*) and statutory damages based on the illegal interests and costs Defendants charged of each Plaintiff, pursuant to M.C.L. 445.257 ((1). Triple Actual damages if the Court finds Defendants' scheme and plan alleged above as willful non-compliance. M.C.L. 445.257(2); to all class members in a Class Action Judgment; and

b.    Equitable, declaratory and INJUNCTIVE RELIEF pursuant to M.C.L. 445.257(1) to stop the wrongful, willful and illegal plan and scheme of defendants as alleged above using (*Exhibit 1, 2 and 3*); and

c.    Reasonable attorney's fees and court cost pursuant to M.C.L.445.257(2) with judicial sanction and Injunctive Relief.

**FDCPA RECOVERY CLAIMS FOR RELIEF**

107.

76.    Defendant has violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a.    Defendant violated 15 U.S.C. 1692e and 15 U.S.C. 1692e (10) by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a mortgage debt using the communications at (*Exhibit 1, 2 and 3*) and breaching Plaintiffs' privacy in violations of the FDCPA as stated above; and

b.    Defendant collected on the debt and violated 15 U.S.C. 1692d with conduct described above that harasses and abuses a homeowner in connection with collecting the mortgage debt through (*Exhibit 2*) in publicizing private mortgage debt information as stated above; and

-20-

c.      Defendant collected on the debt and violated 15 U.S.C. 1692f(7) and (8) with conduct described above that harasses and abuses a homeowner in connection with collecting the mortgage debt through (*Exhibit 2*) in publicizing private mortgage debt information as stated above; and

d.      The Defendant communicated to third parties and the world in publishing foreclosure sale notices with the mortgage debt amount, the homeowner's name IN BOLD and that he is in default and owes a debt through **Exhibit 2** in violation 15 U.S.C. §1692c(b); and

e.      Defendant violated 15 U.S.C. 1692d (4) by publishing that the sale of the mortgage debt to the world and the State of Michigan using **Exhibit 2** as mentioned above beyond the State Foreclosure Statute; and

f.      Defendant violated 15 U.S.C. 1692e (3) and (10) by communicating with mass produced letters and notices that claim to have an attorney file review when there is no meaningful attorney involvement with communications to the Thompkes in **Exhibit 1, 2 and 3** as mentioned above. *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996).

**Wherefore**, Plaintiff seeks judgment against Defendant for:

a.      Statutory and Actual damages for Plaintiff pursuant to 15 U.S.C. 1692k(a)(2)(A) and (B);

b.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. 1692k(a)(3); and;

c.      Such further relief as the court deems just and proper.

## <u>VII. JURY TRIAL DEMAND</u>

Plaintiff demands a Trial by Jury on all issues.

Respectfully submitted,

September 22, 2017                    s/Brian P. Parker
                                     BRIAN P. PARKER (P48617)
                                     Attorney for Plaintiffs